JOHN TRACEY (DEPENDENT), APPELLANT, v. ACME DISTRIBUTING COMPANY (EMPLOYER), AND UTILITIES INSURANCE COMPANY (INSURER), RESPONDENTS.—160 S. W. (2d) 469.

St. Louis Court of Appeals. Opinion filed April 7, 1942.

Motion for Rehearing Overruled April 21, 1942.

*H. P. Tudor* for appellant.

*Strubinger, Tudor & Tombrink* of counsel.

*George Gantner* and *E. McD. Stevens* for respondents.

McCULLEN, J.—This is an appeal from a judgment of the Circuit Court of St. Louis County affirming the findings and awards of the Missouri Workmen's Compensation Commission allowing compensation to appellant John Tracey as a dependent of Leroy Tracey, his brother, arising from the death of Leroy Tracey. There is no dispute between the parties as to the facts which form the basis of the claim for compensation. The controversy revolves around the question as to the amount of compensation that should be allowed and the method of computing the amount. Appellant contends that the amount of compensation allowed him is inadequate, and that there is not sufficient competent evidence in the record to warrant the making of the award for the amount allowed.

It is agreed by the parties that Leroy Tracey, the deceased, was a regular employee of the above-named employer, but that his work was irregular and seasonal. At the time of his death on October 29, 1940, he was carrying on his work for the employer as a handbill distributor, and while thus engaged in St. Louis County he was struck

by a railroad train. He died on the date of the accident. It is not disputed that his death arose out of and in the course of his employment. He left no children, having been unmarried. Surviving him were John Tracey, a brother (appellant herein), and two sisters, Mrs. Margaret Krebs and Mrs. Annie Grafford. It is conceded that neither of said sisters was dependent upon the deceased in any way. John Tracey, appellant herein, was not employed and it is conceded that he had been totally disabled for six years preceding the death of his brother Leroy Tracey. Each of the sisters contributed the sum of $10.00 per month toward the support of appellant. Appellant also received toward his support the sum of $12.00 per month from the deceased. Appellant resided with Annie Grafford, one of his two sisters, who paid the rent for the rooms in which the two lived. She also furnished the food that appellant and she ate. It is undisputed that her contribution towards the support of appellant approximated $10.00 a month as above stated.

It is undisputed that in the year preceding his death the deceased had worked 117 days during which time he earned a total of $302.90; that his basic daily wage was $2.60.

The original award made by a referee of the Missouri Workmen's Compensation Commission in favor of appellant was in the sum of $6.00 per week for 155 60/100ths weeks, totaling $933.60, to which was added burial expenses of $150.00, making a total of $1083.60. On application by the employer and insurer for review, the full commission made a final award of compensation for 92 1/3 weeks at $6.00 per week, totaling $554.00, in favor of appellant.

In its additional findings of fact and rulings of law, the full commission found and stated that the deceased's average wage was $10.00 per week based on $2.60 per day and a minimum of 200 working days per year, or $520.00 yearly earnings; that the deceased contributed to the claimant, appellant herein, his dependent brother, the amount of $12.00 per month or $144.00 per year; that the total death benefit is the sum of $2000.00; that the contribution to claimant appellant by the deceased of $144.00 per year made a weekly contribution of $2.77, and that said proportionate part of deceased's weekly wages thus contributed to the claimant gives the sum of $554.00 due claimant as the dependent brother of the deceased, based on the total death benefit of $2000.00, "or the amount of 27.7 per cent. as a partial dependent on deceased." The full commission further found there was no evidence to warrant an allowance for burial expense and denied such allowance. The finding as to burial expenses is not before us, no point thereon having been made by appellant. In its final award the full commission stated the method of wage computation as follows: $2.60 per day wages times 200 days, or $520.00 per year, $10.00 per week average wage."

The point of controversy between the parties is the matter of the proportion or percentage of appellant's dependency and the method to be used to arrive at that percentage.

Under the facts in evidence we must look to Section 3709, Revised Statutes Missouri, 1939, and Section 3710, Revised Statutes Missouri, 1939, for our rules to determine these questions. The applicable portions of Section 3709, *supra*, are subsections (b) and (c). Subsection (b) provides as follows:

"The employer shall also pay to the total dependents of the employee a single total death benefit, the amount of which shall be determined in the following manner, to-wit: There shall first be determined as a basis for computation 66 2/3 per cent. of the employee's average weekly earnings during the year immediately preceding the injury as provided in Section 3710 and such amount shall then be multiplied by three hundred and the amount so determined shall be the amount of such death benefit. . . . If there be a total dependent or total dependents as the case may be, no death benefit shall be payable to partial dependents. . . ."

It will be noted that, according to all parties, the deceased employee herein worked only 117 days in the year preceding his death and actually earned a total for that year of $302.90, his daily wage basis being $2.60. There is a slight difference between the result of the detailed figures given and the total earnings stipulated by the parties, but we have accepted the stipulated total amount of actual earnings as correct.

Subsection (e) of Section 3710, Revised Statutes Missouri, 1939, provided that as to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of 300 as a basis for computing the annual earnings, "provided, the minimum number of days which shall be so used for the basis of the year's work shall be not less than 200." Therefore, taking the minimum of 200 days at $2.60, we find it amounts to $520.00 for the minimum year. If we divide the last-named amount by 52, the number of weeks in a year, the result is $10.00, the minimum theoretical weekly earning. Under subsection (b) of Section 3709, *supra*, the single total death benefit therefore would be two-thirds of $10.00, amounting to $6.66 2/3, times 300, resulting in a single total minimum death benefit of $2000.00. The above method of computation to ascertain the amount of such single total death benefit is not only in accord with the statutes mentioned but it has been approved by our Supreme Court in Vaseleou v. St. Louis Realty & Securities Co., 344 Mo. 1121, 130 S. W. (2d) 538, citing with approval Sullins v. Maxwell Const. Co. (Mo. App.), 86 S. W. (2d) 380. Furthermore, the parties herein appear not to be in any disagreement as to such method of computing such total death benefit.

In determining the percentage or proportion of the dependency of appellant as a partial dependent of the deceased employee, we must look to Section 3709 (c), Revised Statutes Missouri, 1939, which provides as follows:

"If there be partial dependents and no total dependents, a part of the death benefit herein provided in the case of total dependents, *determined by the proportion of his contributions to all partial dependents by the employee* at the time of the injury, shall be paid by the employer to each of such dependents proportionately." (Italics ours.)

In Triola et al. v. Western Union Tel. Co., 224 Mo. App. 258, 25 S. W. (2d) 518, subsection (c), *supra,* was brought squarely before this court, and, in an opinion which carefully considered the statutes above mentioned, this court laid down a formula which we believe to be not only applicable but also controlling in the case at bar because said opinion later met with the approval of our Supreme Court in Elihinger v. Wolf House Furnishing Co., 337 Mo. 9, 19, 85 S. W. (2d) 11, 16. In the Triola case this court said:

"The average weekly earnings of the deceased was $15.24. In order to arrive at the total death benefit as provided in paragraph (b) above set out, we would multiply two-thirds of the average weekly earnings by three hundred, which would amount to $3,048. Now to determine the amount which partial dependents would receive we would have to use the above total as a basis, and under our construction of paragraph (c), *if deceased had contributed two-thirds of his income to his parents, these parents as such partial dependents would be entitled to receive two-thirds of the total death benefit, but where, as in this case, the partial dependents receive all of the employee's wages, then such claimants would be entitled to receive $3,048, or the same amount that total dependents would receive, because the act provides that if there be partial dependents and no total dependents, the part of the death benefit which is to be paid such partial dependents, proportionately, shall be determined by the proportion of his contributions to all partial dependents.* Paragraph (c) when properly construed, we think, means that the part of the death benefit which partial dependents receive is determined by the proportion of the employee's wages which he contributes to such partial dependents, and not such amount as the total contributions bear to the total family income." [Triola v. Western Union Tel. Co., 224 Mo. App. 258, 264, 25 S. W. (2d) 518, 520.] (Italics ours.)

It will be observed that the Triola case holds that, in arriving at the percentage of the total benefit that partial dependents are entitled to, two factors must be employed, namely, that proportion of the deceased's wages contributed to such partial dependents as one factor, and the total amount of the deceased's income or wages as the other.

In the case at bar the commission used the amount of $144.00, admittedly the deceased employee's contribution for the year, as one factor, but improperly used the artificial amount of $10.00 weekly or $520.00 yearly, based upon the arbitrary statutory 200-day minimum, as the other factor to arrive at the result of 27.7 as the percentage of appellant's dependency. By such method the commission ignored the admitted fact that the deceased employee actually earned only $302.90 during the year mentioned, and used the arbitrary theoretical figure which is provided by the statute merely as a basis for computing the single total death benefit to be paid by the employer but has nothing whatever to do with the rule provided in subsection (c) of Section 3709 for determining the portion of such single total benefit that partial dependents shall receive. The earnings of $10.00 weekly or $520.00 yearly, arrived at by the commission, are merely the arbitrary figures resulting from the use of the arbitrary minimum of 200 days per year formula required by subsection (e) of Section 3710, *supra,* because this happens to be a case where the deceased employee worked less than 200 days in the year preceding his death. Such arbitrary amounts, while properly and necessarily used as a basis for computing the single total death benefit to fix the amount which the employer shall pay on account of the death as a first step in computation, are neither necessary nor proper as a basis for computing the proportion or percentage thereof that partial dpendents shall receive. On the contrary, the use of such a theoretical factor as a basis for determining the percentage or "proportion" to be paid to partial dependents is contrary to the rule stated by the Legislature in subsection (c) of Section 3709, *supra.* That subsection provides that the amount (out of the single total death benefit) to be paid to partial dependents shall be "determined by the *proportion* of his *contributions* to all partial dependents *by the employee* at the time of the injury," and that it shall be paid by the employer "to each of such dependents proportionately." (Italics ours.)

It appears to be clear that the Legislature intended by subsection (b) of Section 3709, *supra,* to provide a method to fix with certainty the amount of the single total death benefit for which the employer shall be liable, which, together with subsection (e) of Section 3710 covering cases where the employment is irregular and less than the full working days of the year preceding the injury, provide rules to cover every kind of case that could arise in so far as fixing the amount of the single total death benefit is concerned. It is also clear that subsection (c) was intended as the sole method of providing for *apportioning* and *distributing* the death benefit to partial dependents and has nothing whatsoever to do with the method of computing the *amount* of such single total death benefit although the amount thereof constitutes the fund out of which partial dependents are to be paid "proportionately" in accordance with the "proportion of his con-

tributions by the employee to all partial dependents.'' [Section 3709 (c), *supra.*]

That the above construction of the statutes involved herein is in accord with the opinions in the Triola and Elihinger cases, *supra,* is demonstrated by a few excerpts from the Elihinger opinion of our Supreme Court. The Elihinger case, originally decided by this court, was certified to the Supreme Court by this court because of conflict with the opinion of another Court of Appeals. It was therefore argued and heard in the Supreme Court as though it had gone on direct appeal to that court. In its opinion therein, the Supreme Court also reviewed the prior opinion of this court in the Triola case, *supra,* on the same question involved in the case at bar. Referring to the deceased employee, the court said: ''If he contributes three-fourths of his income to partial dependents, such partial dependents would receive three-fourths of the total death benefit, or if he contributed all his earnings, the partial dependents would receive the total death benefit, or the same amount the total dependents would receive.'' [Elihinger case, *supra,* 337 Mo. 9, 20, 85 S. W. (2d) 11, 16.] The Supreme Court also quoted and adopted as its own the following from this court's opinion on the same point in the Triola case: ''Paragraph (c) when properly construed, we think, means that the part of the death benefit which partial dependents receive is determined by the proportion of the employee's wages which he contributes to such partial dependents . . . . '' [Elihinger case, *supra.*]

In the case at bar, while the exact amount earned in any particular week or month was not shown, the deceased's average contributions to the dependent appellant are admitted to have been $12.00 per month. It is admitted that the deceased worked 117 days in the year preceding his death, which would be an average of 9¾ days per month. It is also admitted that his *actual* total earnings during said year were $302.90, thus making his actual average earnings per month for that year the sum of $25.24. Therefore, under subsection (c) of Section 3709, *supra,* it is clear that appellant is entitled to receive out of the $2,000 total death benefit an amount to be determined by the proportion of the deceased's employee's contribution to all partial dependents.

Respondent herein, in its brief, says: ''If claimant's contention is correct that he was a total dependent upon the deceased, then if one of the surviving sisters should be so unfortunate as to sustain a fatal compensable accident, this claimant could again collect as a total dependent in that case, and he could do the same thing again if the same unfortunate fate should overtake the other sister. In other words, the claimant could be a total dependent on three different persons, which, of course, is contradictory and absurd on its face.'' The trouble with the above argument is that it is based upon an assumption that appellant claims he was a ''total dependent upon the

988

deceased.'' There is no foundation for such assumption. Appellant does not claim to be a total dependent. On the contrary, it is conceded by appellant that he is only a partial dependent, in view of which there would not be anything contradictory or absurd in the hypothetical situation as to the two sisters presented in respondent's argument. Furthermore, our decision is based upon the facts which show that appellant is only a partial dependent but is nevertheless entitled, under the law and the facts herein, to a larger award of compensation than was granted by the commission.

In this case there is only one partial dependent and no total dependents. Appellant therefore being ''all partial dependents'' herein, and it being undisputed that the average actual earnings per month of the deceased were $25.24, out of which he contributed $12.00 per month to appellant, it becomes evident that appellant is entitled to receive as an award 12/25.24, or 47.54 per cent., of the $2000.00 total death benefit, that being his ''proportionate'' part as provided by the statutes, *supra*, under the agreed facts herein, and not 27.7 per cent. as awarded by the commission.

The judgment of the circuit court is reversed and the cause remanded with directions to said court to set aside its judgment and remand the cause to the Workmen's Compensation Commission for proceedings not inconsistent with the views herein expressed. *Hughes, P. J.,* and *Anderson, J.,* concur.