Donna Sue BRADSHAW, Respondent,

Russell DeWayne Ungles and Willard K. Ungles, Dependents of Willard Ungles, Deceased, Appellants,

v.

RICHARDSON TRUCKS, INC., and Michigan Mutual Liability Company, Appellants,

Bilyeu Refrigerated Transport Corporation and Great American Insurance Company, Appellants-Respondents,

Navajo Freight Lines, Inc., and Security Mutual Insurance Company, Respondents.

No. 56208.

Supreme Court of Missouri, En Banc.

May 10, 1971.

Rehearing Denied June 14, 1971.

R. Leroy Miller, Trenton, Jack B. Robertson, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for appellants, Russell DeWayne Ungles and Willard K. Ungles.

Don M. Jackson, Kansas City, for appellants, Richardson Truck Lines, Inc. and Michigan Mutual Liability Insurance Company. Jackson & Sherman, Kansas City, of counsel.

John R. Gibson, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for Bilyeu

Refrigerated Transport Corporation, and Great American Insurance Company.

Chapman & Chapman, By. Nolan Chapman, Jr., Chillicothe, for respondents, Navajo Freight Lines, Incorporated and Security Mutual Insurance Co.

DONNELLY, Judge.

This is a workmen's compensation case. Claimants are the dependents of Willard K. Ungles, who was killed in an accident which occurred April 21, 1966, at the loading dock of American Cyanamide Company in Kansas City, and which involved a vehicle, owned by Richardson Trucks, Inc., permanently leased to Bilyeu Refrigerated Transport Corp., and trip leased at the time of the accident to Navajo Freight Lines, Inc.

*The question is*: Which of the three firms shall be held liable to the dependents of Willard K. Ungles, as his "employer" or "employers," for death benefits and burial allowance under the Workmen's Compensation Law?

Richardson's primary business was the leasing of trucks to carriers. It had no ICC certification. Under the terms of the lease of vehicles to Bilyeu, Richardson was to hire drivers satisfactory to Bilyeu and able to pass a physical for ICC certification. Richardson was also responsible for drivers' salaries, vehicle maintenance, safety devices and accessories required by law, taxes, fuel, and the cost of licensing vehicles in Bilyeu's name. Bilyeu was to pay Richardson 62½% of the fees obtained from shippers, and was to furnish workmen's compensation insurance. The lease provided for "full control" in Bilyeu of the employees driving the leased vehicles, Bilyeu could reject drivers if not suitable, and Bilyeu had the power to discipline or dismiss drivers. Drivers were required to report by telephone to Bilyeu's dispatcher at least once daily, and at the end of each run. Richardson retained control over matters generally affecting maintenance.

Bilyeu usually had more loads eastbound than westbound, and when Bilyeu could not get loads of its own, it attempted to lease its tractors and trailers for a single trip to a carrier which had more loads westbound than eastbound. This avoided the unprofitable practice of "deadheading" an empty vehicle back from the east coast and was thus beneficial to both Bilyeu and Richardson. Lead drivers, such as Ungles, were authorized to sign "trip leases" in such situations. The purpose of the telephone call at the end of each run was to enable the dispatcher to instruct the drivers concerning the return loads Bilyeu might have, or the trip leases that might have been arranged. It was after such a run that the trip lease involved in this case was executed to Navajo. The load was a shipment of drugs and animal feed supplements from New Jersey to Kansas City. Bilyeu's ICC certification did not include authorization to carry this type of cargo. Navajo's did. The trip lease included a provision giving Navajo "full control" of the driver's actions.

The Industrial Commission found Bilyeu solely liable. The Circuit Court of Jackson County found Richardson and Bilyeu liable. The Kansas City Court of Appeals found Richardson, Bilyeu and Navajo liable. We ordered the case transferred here and determine it "the same as on original appeal." Article V, § 10, Const. of Mo. 1945, V.A.M.S.

The Industrial Commission made the following findings:

"(1) Richardson appointed Ungles to work for Bilyeu as a leased truck driver.

"(2) Thereafter Ungles made application to Bilyeu for employment as a truck driver and was so employed by Bilyeu after being thoroughly checked by its agents.

"(3) Ungles was on or about the business of the special employer, Bilyeu, in preparing to unload the load of drugs at the dock at American Cyanamide Company when he suffered the fatal accident.

"(4) Richardson was the general employer and Bilyeu was the special employer of Ungles at the time of the accident.

"(5) Richardson was not the employer of Ungles at the time he sustained the accident, so as to be liable under the Missouri Workmen's Compensation Act.

"(6) Navajo was not the employer of Ungles at the time he sustained the accident.

"(7) Employee sustained injuries from which he died as the result of an accident arising out of and in the course of his employment for the special employer, Bilyeu Refrigerated Transport Company."

The scope of judicial review of an award of the Industrial Commission was recently stated in Brown v. Missouri Lumber Transports, Inc., Mo.Sup., 456 S.W.2d 306, 307, as follows:

"It probably is unnecessary to state the rules governing review of an award of the Industrial Commission, but the parties have briefed the matter extensively and, accordingly, another statement of such principles will be made. The award is not to be set aside upon review if the commission could reasonably have made its findings and reached its result on the evidence before it because the court's duty in reviewing a compensation case is to determine whether the commission's award is supported by competent and substantial evidence upon the whole record. The reviewing court may not substitute its own judgment on the evidence for that of the commission. The reviewing court is authorized to decide whether the commission could reasonably have made its findings and reached its result upon consideration of all the evidence before it; and it is authorized to set aside decisions only when clearly contrary to the overwhelming weight of the evidence. The court reviews the record in the light most favorable to the findings of the commission; weight of the evidence and credibility of the witnesses are for the commission; and where evidence and inferences are conflicting, resolution rests with the commission and it is conclusive on the reviewing court."

In Dickhaut v. Bilyeu Refrigerated Transport Corp., Mo.Sup., 441 S.W.2d 54, 57, this Court said: "The governing principle of 'servant loaned or hired to another' (58 Am.Jur. 'Workmen's Compensation' Sec. 343, p. 812) is summarized in this applicable language: 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.' 1 Larson, Workmen's Compensation, Sec. 48, p. 805."

We have reviewed the record and believe that the Industrial Commission *could have* properly concluded from the evidence in the record that Ungles made a contract of hire with Bilyeu, that the work being done by Ungles was essentially that of Bilyeu, that Bilyeu had the right to control the details of Ungles' work (Cf. Dickhaut v. Bilyeu Refrigerated Transport Corp., supra; Patton v. Patton, Mo.Sup., 308 S.W. 2d 739), and that Ungles did not consent to be Navajo's employee when the trip lease was executed (Cf. Stroud v. Zuzich, Mo. Sup., 271 S.W.2d 549; Brown v. Missouri Lumber Transports, Inc., supra).

The question before the Industrial Commission was: Who was Ungles' employer? This question was one of fact and it was resolved against Bilyeu. In our opinion, the evidence is ample to sustain the finding of the Commission and it should be affirmed.

It has been suggested that the language appearing in the last paragraph of the Patton case, supra, may have had the general effect of deterring the Industrial Commis-

sion from finding employers jointly liable under V.A.M.S. § 287.130. If this be true, it should no longer be given such effect. See Wigger v. Consumers Co-op Ass'n, Mo. App., 301 S.W.2d 56; Larson's Workmen's Compensation Law, § 48.40; and Long v. Sims Motor Transport Lines, 124 Ind.App. 504, 117 N.E.2d 276. Cf. Bargeon v. Perishable Distributing Co., et al., Mo.Sup., 465 S.W.2d 571 (decided April 12, 1971).

The judgment of the circuit court is reversed, and the cause is remanded with directions to affirm and reinstate in all respects the award of the Industrial Commission.

All concur.