**Maggie MANIS et al.,
Plaintiffs-Respondents,**

v.

**L. A. HILDERBRANDT ENTERPRISES
and Bituminous Casualty Corporation,
Defendants-Appellants.**

No. 41500.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 13, 1980.

Frank J. Lahey, Jr., Albert I. Graff, Graff & Lahey, St. Louis, for defendants-appellants.

Daniel C. Aubuchon, St. Louis, for plaintiffs-respondents.

DOWD, Presiding Judge.

An employer and its insurer appeal from the trial court's reversal of the decision of the Labor and Industrial Relations Commission denying workmen's compensation benefits to the respondents, the surviving mother and siblings of Frank Mulenex, a deceased employee. The trial court's action was based upon the conclusion appellants' evidence did not contradict respondents' evidence of partial dependency and that the Commission's action was not supported by and was contrary to the overwhelming weight of the evidence. The Commission had found the respondents were not the partial dependents of the deceased employee, a seventeen year old unmarried male living apart from respondents when he died in 1975.

At the administrative hearing, respondent mother testified that, although Frank had alternatively lived with his girlfriend's parents as well as with respondent in the year before his death, Frank had lived with her the majority of the time during his last year and had not lived away from home prior to his last year. Respondent testified Frank regularly gave her one-half of the money he earned. She testified Frank regularly worked for respondent in her confectionery on Saturday and also in the evenings during periods when Frank lived with respondent. Respondent was receiving child support of $150 per month. She was receiving $50 per month for Frank but testified Frank told her to use his share of this money when he lived apart. Respondent had a cash box into which she placed income from all sources and out of which she paid all expenses. When he was not working, Frank would also take money from the cash box for his expenses. During the period 1974 and 1975, respondent's income, exclusive of money paid by her son, averaged approximately $2645 per year. Respondent testified she would make small loans to her son which he would repay when he was paid.

Respondent believed Frank had attempted, through his employer, to purchase an automobile which had been repossessed soon after its acquisition. Frank had a bank account of $45 when he died.

In 1974, the deceased employee earned a gross income of approximately $2070. His net income for the same year was approximately $1790. In 1975, prior to his death in August, Frank had earned a gross income of approximately $2300. His approximate net income for the same period was $1940. One of Frank's employers during 1974 and 1975 would make additional deductions from Frank's pay to pay for items such as soft drinks provided by the employer.

Frank's former girlfriend and her parents testified that Frank had lived with them most of the time in the year preceding his

death because he had differences with other members of his family and because respondent had put him out of the house. Because Frank was somewhat profligate, spending money on drugs and weekends of "partying", Frank began giving his girlfriend money for safe-keeping so he would have "money to go to work and to have cigarettes and stuff like that." The girlfriend and her parents opined that respondent's son did not visit his mother on a regular basis and did not give his mother money on a regular basis, although Frank did infrequently visit his mother to repay some minor loans. The witnesses conceded Frank may have given his mother money without their knowledge. During the year prior to his death, Frank bought clothes and other small gifts including a stove for $25 for his girlfriend, gave his girlfriend his paycheck worth perhaps $75–80 for her birthday, gave his girlfriend's father a C.B. radio, and bought flowers for his girlfriend's mother. Late in his life, respondent's son rented an apartment for one month, but he returned to his girlfriend's home upon an agreement to pay for his room and board and paid $100 to his girlfriend's parents.

Testimony by Frank's employer at the time of his death, who gave Frank transportation to and from work, tended to confirm that Frank lived at his mother's house only occasionally in 1974 and not in 1975 during periods of time when Frank worked for the employer. The respondent's son had attempted to purchase an automobile through his employer and had made two or three payments of approximately $28 before stopping.

Upon the foregoing evidence, the Commission affirmed the referee's findings of fact and conclusions of law "conclud[ing] that the *credible* [emphasis added] evidence of record fails to establish that claimants were dependent for their support, even in part, on the deceased employee."

Upon appeal, appellants contend the court reviewing an administrative decision must defer to the administrative agency's findings of credibility and that the Commis-

sion's denial of benefits in the instant case was supported by competent and substantial evidence. We agree.

In reviewing a workmen's compensation case, we review the record, including legitimate inferences, in a light most favorable to the findings and award of the Commission, and its award is conclusive and to be upheld if supported by substantial competent evidence. We may not substitute our judgment for that of the Commission nor set it aside unless the decision is clearly contrary to the overwhelming weight of the evidence. Any conflicts in the evidence and the credibility and weight to be given to the testimony of witnesses is for the Commission's determination. Its findings in that regard are conclusive upon the reviewing court. *Taliaferro v. Barnes Hospital*, 586 S.W.2d 429, 431[1–2] (Mo.App.1979); *Bernardino v. Gen'l Molding, Inc.*, 586 S.W.2d 365, 366 (Mo.App.1979); *Ferguson v. Hood*, 541 S.W.2d 19 (Mo.App.1976).

It is clear the Commission's determination in the instant case was based upon a conclusion that respondent mother's testimony supportive of partial dependency was not credible. The Commission is charged with the responsibility of passing upon the credibility of all witnesses and may disbelieve testimony of a witness though no contrary or impeaching evidence appears. *Bernardino v. Gen'l Molding, Inc., supra; Simmons v. Wilson Frt. Co.*, 549 S.W.2d 571, 572[1] (Mo.App.1977). It is true the Commission could have awarded benefits for partial dependency upon the instant record. Such is not dispositive of the question before us, however. Upon the record before us, we cannot say the Commission's contrary decision denying partial dependency benefits is not supported by competent and substantial evidence or was contrary to the overwhelming weight of the evidence. *Ferguson v. Hood, supra.*

We have examined the record under the appropriate standard of review, *Petersen v. Central Pattern Co.*, 562 S.W.2d 153 (Mo. App.1978), and conclude that the Commission's award denying benefits for partial dependency is supported by substantial

competent evidence. The judgment of the trial court reversing the Commission's decision is in error.

The judgment is reversed.

CRIST and REINHARD, JJ., concur.